IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **04-cv-02094-JLK-MJW**

**WILLIAM G. SMITH, et al.**,

       Plaintiffs,

v.

**MATTHEW BRUDERMAN, et al.,**

       Defendants.

_____

ORDER ON RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS
_____

KANE, J.

These long-winded litigants are before me on Defendants' Rule 12(c) Motion for Judgment on the Pleadings. Defendants' 28-page Motion was the culmination of a pleading process that commenced with a 68 page, 798 numbered paragraph Complaint with an additional 40-plus pages of attachments. In response to Defendants' Motion for Judgment, Plaintiffs filed a 50-page Opposition brief with 100 pages of additional attachments. Having familiarized myself now with all of the filings, I find much of Defendants' Motion to be without merit. I also find, however, that Plaintiffs' rambling and undirected Complaint invited a limiting Motion and admonish both sides to tailor their arguments in the future. The delay in ruling on Defendants' Motion – which was fully briefed in August – is the direct result of the poor state of the pleadings and legal briefs submitted to date.

Rather than undertake a detailed analysis of every argument in Defendants' 28-page Motion, I summarize the facts and issue the following rulings in an effort to ratchet down the hyperbole and tailor the claims and defenses. Rarely has the old adage "less is more" seen a more appropriate application than here.

*Facts*.

Plaintiffs William and Dorothy Smith, Michael Wodlinger, Stephen Wodlinger and Stephen Wodlinger's spouse, Kathleen Knapp, and their related trusts and investment entities, filed suit against investment advisors Matthew Bruderman and Ron Lehman, as well as a series of funds and corporate entities Plaintiffs contend are alter ego or shell corporations of Bruderman. The individual Plaintiffs and their related investment entities are referred to collectively as "Smith" on the one hand and "Wodlinger" on the other.

According to Smith and Wodlinger, each was solicited by Bruderman and fraudulently encouraged over a period of time to invest in and then to provide loans to Bruderman's various sham funds. Smith and Wodlinger contend they were strung along over time with returns in the form of new stock in lieu of interest payments and assurances of big payoffs to come. In the Spring of 2003, the two began comparing notes about their investment relationships with Bruderman and confirmed something was amiss. While both held significant shares of stock in the same list of funds, they had never received any direct financial return and the shares, it appeared, were worthless.

Smith and Wodlinger filed suit in 2004, asserting a total of 35 separate claims for violations of the Securities and Exchange Act of 1934, the Colorado Securities Act, the

2

Colorado Organized Crime Control Act (COCCA), and common law claims for fraud, breach of implied contract, breach of fiduciary duty, and for intentional and negligent infliction of emotional distress.  As set forth above, the Complaint spanned 68 single-spaced typewritten pages and was comprised of 798 numbered paragraphs.

Defendants initially moved to dismiss the Complaint under paragraphs (a) and (e) of Fed. R. Civ. P. Rule 8 for failure to be concise and direct or to set forth a short and plain statement demonstrating entitlement to relief.  In deference to Plaintiffs and because the majority of Plaintiffs' claims were for fraud which must be pled with specificity under Rule 9(b), I denied the Rule 8 Motion and allowed Plaintiffs to proceed on their original Complaint.  After filing their Answer, Defendants filed the instant Motion for Judgment Rule 12(c).

### *Standard of Review.*

A Rule 12(c) motion for judgment on the pleadings is subject to the same standards as a motion under Rule 12(b)(6).  *Mock v. T.G. & Y Stores, Co.*, 971 F.2d 522, 528 (10th Cir. 1992).  Like a motion to dismiss filed in lieu of an answer and directed solely to an opponent's complaint, a Rule 12(c) motion for judgment on the pleadings may be granted only if it appears beyond doubt that plaintiff is unable to prove any set of facts that would entitle him to relief.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

### *Rulings*.

1.   **Personal Jurisdiction**.  Defendants' first challenge is to the personal jurisdiction

of the Court over Bruderman and Lehman, individually, and over all of their related funds and business entities.  While I reject Plaintiffs' contention that Defendants waived their right to challenge personal jurisdiction by failing to raise it in their Rule 8 Motion,[1] I find Defendants' assertions that personal jurisdiction is otherwise lacking completely without merit.

With respect to the individual Defendants Bruderman and Lehman, Defendants do not dispute that Matthew Bruderman is subject to the personal jurisdiction of the Court, and launch only a half-hearted challenge to the Court's jurisdiction over Lehman.  Based on Wodlinger's statement that Lehman personally traveled to Colorado to meet with him regarding advertising for Defendant Drift Boardwear LLC (an entity owned by Lehman and in which Plaintiffs invested) that ran on Wodlinger's radio stations and claim that Lehman sent membership and stock certificates in other Defendant entities to Wodlinger's address in Colorado as part of the fraudulent activities alleged, I find Lehman not only maintained minimum contacts with Colorado generally, but also directed allegedly fraudulent activities toward a Colorado resident.  Under these circumstances, no serious challenge to this Court's jurisdiction over Lehman will lie.

---

[1] Contrary to Plaintiffs' assertion, Rule 12(h) does not apply because Defendants raised their personal jurisdiction defense in their Answer.  Plaintiffs do not cite any other authority for their contention that Defendants waived their right to assert a personal jurisdiction defense because they failed to raise it first in their Rule 8(a) motion is not well received.

The main thrust of Defendants' arguments regarding personal jurisdiction is that personal jurisdiction does not exist over any of the corporate defendant entities because they are "non-residents" who have not "purposefully directed any activities at Colorado residents or otherwise acted 'to avail themselves of the privileges of conducting activities' in the state of Colorado." Defs.' Mot. for Judgment at 10. Plaintiffs contend personal jurisdiction exists because the corporate entities are nothing more than instrumentalities of the fraud and/or alter-egos of Bruderman and Lehman.

"If one corporation is the alter-ego of another, a court may pierce the corporate veil and base its jurisdiction on one corporation's contacts with the forum state." *F.D.I.C. V. First Interstate Bank of Denver, N.A.*, 937 F. Supp. 1461, 1467 (D. Colo. 1996). For one corporation to be the alter-ego of an individual or a corporate entity owned by him, the following combination of circumstances must be present:

> First, that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality or separateness of said corporation has ceased. Second, that the facts are such that an adherence to the fiction of separate existence of the corporation would, under the particular circumstances, sanction fraud or promote injustice.

*Shamrock Oil & Gas Co. v. Ethridge*, 159 F. Supp. 693, 697 (D. Colo. 1958). Here, Plaintiffs' allegations are that corporate defendant Vanadium is under

common ownership with defendant and alleged Bruderman alter ego M.J. Bruderman & Company, Inc., that Vanadium shares the same address as defendant Bruderman Enterprises, Inc., and that Matthew Bruderman is the registered agent for all three entities.  Matthew Bruderman is also alleged to have represented himself to be the CEO of M.J. Bruderman, the owner of Vanadium, and one of the owners and managers of defendant CIC Global Industries.  Bruderman himself describes Bruderman Enterprises as a holding company for his interests in a variety of companies (Bruderman Decl. ¶ 7) and according to Smith, Bruderman told him he created CIC Industries to facilitate his acquisition of Silverzipper.com.  Smith Decl. ¶¶ 22-23.  These allegations are sufficient to support an inference that the various Bruderman entities, Vanadium and CIC Global are alter-egos or instrumentalities of Bruderman and his alleged fraud.

Defendants' reliance on *Progressive Games, Inc. v. Amusements Extra, Inc.*, 83 F. Supp.2d 1185, 1190 (D. Colo. 1999) is unpersuasive.  *Progressive* stands merely for the proposition that where personal jurisdiction is premised on the fact defendants are intertwined and act collectively, jurisdiction must be evaluated as to each defendant separately.  Here, jurisdiction is not premised on the intertwined nature or collective action of the various corporate defendants.  It is premised on their status as alter-egos of Matthew Bruderman and the *Progressive* decision is inapposite.

**2.**     **Statute of Limitations**.  Defendants contend several of Plaintiffs' claims are

barred under applicable statutes of limitations. In response, Plaintiffs invoke the principle of equitable tolling to argue their claims are not barred because hiding the nature of their actions was part and parcel of Defendants' fraud. I agree.

Plaintiffs have made allegations which, if true, preclude any finding that their claims based on their investments in Microbest, Silverzipper.com, Styleshop, and Shark Fund are barred by either the three-year statute of frauds applicable to their breach of contract claims, the six-year statute of limitations applicable to their claims for fraud or the 2/5 year statute of limitations applicable to claims for securities fraud under the Act.[2] Each of these statutes embody accrual dates triggered by the discovery or embodiment of the breach or fraud. If Plaintiffs' allegations are to be believed, Defendants' efforts to reassure them and hide the fact of their wrongdoing were part and parcel of their fraud, and render all of their claims timely.

For example, Defendants claim Smith and Wodlinger must have known facts surrounding the alleged breach of contract and fraud related to their Microbest investments at least at the time Microbest declared bankruptcy. Not every investment gone bad is the result of fraud or breach, however, especially when one takes as true Plaintiffs' assertions regarding Bruderman's efforts to

---

[2] A cause of action under the Securities Act "may not be brought later than the earlier of : (1) 2 years after the discovery of the facts constituting a violation; or (2) 5 years after such violation." 28 U.S.C. § 1658.

7

reassure them after the bankruptcy that all was well. Plaintiffs allegations support a finding that they did not discover Defendants' wrongdoing until January of 2004, when Bruderman made certain admissions of wrongful conduct and when Plaintiffs compared the 2003 unaudited Shark Fund statements each had received from Bruderman.

Similarly, and while Silverzipper.com went out of business in April 2001 – outside the statute of limitations for breach of contract, for example – it is plausible based on Plaintiffs' assertions that they were placated and compensated for their loss with new stock and stock options that they did not discover Defendants' fraud until Smith and Wodlinger compared notes. *See* Compl. ¶ 145, 147-48. With respect to their Shark Fund investments, Plaintiffs contend they did not discovery the false nature of Bruderman's earlier representations to them about the Fund until October 8, 2003, within each applicable limitations period.

**3.    Sufficiency of allegations under 12(b)(6) standard.**

*a. Fraud.*

Defendants move for judgment on Plaintiffs' numerous fraud-based claims for lack up specificity under a Rule 9(b) standard. They also move for judgment on Plaintiffs' Counts 30 and 31 on the alternative ground that corporate officer "wrongful conduct" is not a cognizable cause of action under Colorado law. I find the Complaint sets forth in such excruciating detail Plaintiffs' theories of fraud that Defendants have no basis to claim a failure of notice under applicable

pleading standards.  My specific rulings on the challenged fraud-based claims are as follows:

- Plaintiffs' claims against Bruderman and Lehman, individually, as corporate officers of Keystone Enterprises, Keystone Holding and Shark Fund LLC for "wrongful conduct" (Counts 30 and 31) are actually claims for fraud against these Defendants and Plaintiffs' myriad allegations of their actions and in support of a scheme to defraud them pass muster under Rule 9(b) for specificity.

- Count 32 against Bruderman and Lehman for violations of § 206 of the Investment Advisors Act, 15 U.S.C. § 80b-6, is limited to an action for rescission of the investment contract and states no claim for damages. *Transamerica Mtg. Advisers, Inc. v. Lewis*, 444 U.S. 11 (1979)(remedy under § 80b-6 is limited to rescission of the investment contract and restitution of any consideration given under it, less any value conferred by other party).  As interpreted by the Supreme Court, restitution specifically does not include compensation for diminution in value of the rescinding party's investment resulting from adviser action or inaction.  *Id.*  Limited to a claim for rescission, Count 32 survives Defendants' Motion for Judgment under Rule 12(c), should Plaintiffs' wish to proceed with it.

- Although not specifically addressed in the briefing, Plaintiffs' Count 33 of Plaintiffs' Complaint for fraud violation of New York law is dismissed

9

based on Plaintiffs' failure to assert why that state's law provides any remedy to Plaintiffs in Colorado.

### b. *Emotional Distress.*

Plaintiffs' allegations in support of a cause of action for either intentional or negligent infliction of emotional distress fail to state a claim under a Rule 12(c) standard and are dismissed. While the Tenth Circuit has recognized the theoretical possibility of an IIED claim based on investment fraud, the facts alleged in the present case fall far short of the standard necessary to state a claim. *See Malandris v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 703 F.2d 1152, 1159 (10th Cir. 1981)(under standard requiring "extreme and outrageous" conduct going "beyond all possible bounds of decency [and] atrocious and utterly intolerable in a civilized community," brokerage firm's relentless manipulation and pressuring of husband to misrepresent facts to wife in order to end-run her wishes to be exclusively in control of account in her name account due to husband's gullibility sufficient to state a claim for IIED in investment fraud context). In addition, there are no factual averments in this case to support a conclusion that the distress suffered by plaintiffs approaches the severity necessary to state a claim under Colorado law. *See Malandris* at 1158-59. The bald assertion that Plaintiffs each were particularly susceptible to emotional distress because of Bruderman's control over their assets does not speak to this requirement.

Plaintiffs' allegations in support of their claim for negligent infliction of

emotional distress fail on their face to state a claim for relief.  "Plaintiffs may recover for negligent infliction of emotional distress only if subjected to an unreasonable risk of bodily harm." *E.g.  Ambraziunas v. Bank of Boulder*, 846 F. Supp. 1459, 1466 (D. Colo. 1994).  No such risk existed, or is alleged, in this case.  Defendants are therefore entitled to judgment on Plaintiffs' Counts 5, 6, 18, and 19.

### *c. COCCA and Colorado Securities Act Claims (Count 35).*

Plaintiffs' Count 35 alleges violation of the Colorado Organized Crime Control Act (COCCA) (Colo. Rev. Stat. § 18-17-101 *et seq.*) and the Colorado Securities Act.  In my experience, the draconian remedies for "racketeering" practices available under COCCA (or its federal predecessor, RICO) rarely prove themselves available to private plaintiffs in the securities fraud context, but I will allow Plaintiffs' Count 35 to proceed to discovery despite envisioning little factual possibility for it surviving under a Rule 56(c) summary judgment standard.  Plaintiffs' Colorado-based securities fraud claim is not barred by the statute of limitations and may also proceed.

### *Conclusion.*

Based on the foregoing, I determine I have personal jurisdiction over individual Defendants Bruderman and Lehman as well as the various corporate and other entities they allegedly control and through which they acted in their dealings with Plaintiffs.  Defendants' Rule 12(c) Motion for Judgment as a Matter of Law is otherwise GRANTED

in part and DENIED in part.  It is GRANTED as to Plaintiffs' Counts 5, 6, 18, and 19 (emotional distress claims); Plaintiffs Count 32 to the extent it seeks damages or any other compensatory relief beyond rescission in contravention of the Supreme Court's *Transamerica* case; and Plaintiffs' Count 33 is dismissed without prejudice under Rule 8 for failure to set forth why New York law provides Plaintiffs any remedy in an action on their investment relationships with Bruderman and Lehman in Colorado.  The Motion is DENIED in all other respects.  Plaintiffs are admonished that any proposed Scheduling or Pretrial Orders offered in this case under Rule 16 will be STRICKEN unless they include a statement of their claims organized by cause of action, and not by defendant or investment transaction, setting forth their specific theory of relief in a succinct and intelligible manner and identify with specificity the particular Defendant entities against which they seek relief and on what specific factual and legal basis.  In my view, the true Defendants in this case are Bruderman and Lehman, who may or may not have acted in a particular transaction through one or more of their alleged alter ego entities.  I reserve the right to order Plaintiffs to file an Amended Complaint in keeping with this admonition, if the development of a workable Scheduling Order proves difficult.

This case will be set for a Scheduling Conference by separate Minute Order.

Dated December 5, 2005.                    **s/John L. Kane**
                                           SENIOR U.S. DISTRICT JUDGE